UNITED STATES *v.* KIMBALL DENTAL MFG. CO. (No. 3472) [1]

---

[1] T. D. 45501.

United States Court of Customs and Patent Appeals, February 1, 1932

*Charles D. Lawrence*, Assistant Attorney General (*Lyman Ward* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*James R. Ryan* for appellee.

[Oral argument December 11, 1931, by Mr. Folks; submitted on record by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The Government has here appealed from a judgment of the United States Customs Court in so far as said judgment sustained a protest made by the importer relating to certain items of an entry of imported merchandise, which merchandise consisted of (*a*) articles composed entirely of metal used in the process of making false teeth, and (*b*) glass articles which were returned for duty as scientific glass articles used in dental surgery. The suit arose under the Tariff Act of 1930.

There are a number of confusing factors in the case, as will hereinafter appear:

First, it is apparent that the collector made an error in classifying the metal articulators under a glass paragraph;

Second, the protest is so worded and punctuated as to render its meaning difficult of ascertainment; and

Third, Government counsel have fallen into error as to the matter of a claim in the protest under paragraph 397 of said act.

The metal articles are referred to as "articulators" and are represented by Exhibit 1 of the record. This exhibit is a metal clamp,

operated by a thumbscrew, and the testimony shows that it is used for mounting false teeth.

The glass articles are represented by Exhibits 4, 5, and 6, and it is claimed by the Government that an examination of them indicates that they—

are used and obviously [are] intended for use as receptacles for surgical sutures, dental floss, medicated or absorbent cotton or other special materials of a chemical nature used by surgeons and dentists.

The collector assessed both the articulators and the glass articles at 85 per centum ad valorem under paragraph 218 (a) of the Tariff Act of 1930, which paragraph reads as follows:

PAR. 218. (a) Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, and utensils, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all the foregoing (except articles provided for in paragraph 217 or in subparagraph (e)), finished or unfinished, wholly or in chief value of glass, 85 per centum ad valorem; wholly or in chief value of fused quartz or fused silica, 50 per centum ad valorem.

The importer filed a protest from which we quote the following excerpt as it appears in the printed record before us:

We claim that these goods are dutiable under the provisions of paragraph 397 of the Tariff Act of 1930, as to the articulators at 45 per centum ad valorem or under paragraph 359 at 35 per centum ad valorem, under paragraph at 1½ cents per pound, or at 50 cents per gross, or under paragraph 218 (e) at 25 per centum ad valorem or 75 per centum ad valorem.

It will be readily discerned that this protest is lacking in clearness, and one of the first difficulties in the case is that of determining what is really claimed by appellee.

There was no brief or oral argument in behalf of appellee to aid us in the matter, and we confess that it has been somewhat difficult to reach a satisfactory conclusion.

The practice in protest cases was designedly rendered inartificial by Congress and simplicity in procedure provided for, but it is the duty of one protesting a classification to set forth *"distinctly and specifically * * * the reasons for the objection thereto."*

As has been indicated, the protest before us, to say the least of it, is somewhat ambiguous, and it should have been in better form.

In the brief filed on behalf of the Government there appears to be a misunderstanding, as we have stated, as to there being any claim by appellee under paragraph 397. At page 4 of said brief, in discussing the articulator merchandise, it is said—

It is obviously a manufacture of metal, and while the collector was perhaps in error in classifying it under paragraph 218 (a) which is a glass paragraph, we submit that it is properly dutiable as a manufacture of metal under paragraph 397 of said act rather than under paragraph 359 as held by the lower court. If this contention is correct, it would seem that the importer is entitled to no

relief regarding this item for failure to invoke said paragraph 397; for the reason that as held in the case of *United States* v. *Irving W. Rice & Co.*, 17 C. C. P. A. 248, at 250—

* * * If it appears that the merchandise was dutiable under a paragraph not named in the protest, if the classification of the collector was erroneous, the protestant must fail.

From an inspection of the protest, *supra*, however, it will be seen that there *is* a claim under paragraph 397 of the Tariff Act of 1930, and it is possible to construe the protest, as worded and punctuated, as claiming all the goods to be dutiable thereunder. This paragraph reads as follows:

PAR. 397. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 65 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

In view of the fact that Exhibits 4, 5, and 6 are composed wholly of glass, it is clear that the merchandise represented by them may not be classified under said paragraph 397, and we assume that the claim of the protest as to the application of same was intended to be confined to the articulators which are of metal, and that, in the alternative, said articulators were also claimed under paragraph 359 of said act. This merchandise was, in fact, held by the Customs Court to be classifiable under that portion of said paragraph 359 which reads—

PAR. 359. * * * dental instruments, and parts thereof, including hypodermic needles, hypodermic syringes, and forceps, wholly or in part of iron, steel, copper, brass, nickel, aluminum, or other metal, * * * 35 per centum ad valorem, * * *.

Since it is apparent to us that appellee did claim as to the articulators under both paragraphs 397 and 359, it is obvious that, in view of the Government's concession as to the applicability of the former, it (appellee) is entitled not only to have the collector's classification of these particular items under paragraph 218 (a) set aside, but also to have them classified under one of the paragraphs claimed, at either 45 per centum (par. 397) or 35 per centum (par. 359).

The question is, Which paragraph applies? The classification by the collector being conceded to be erroneous, there was no presumption of its correctness to be overcome by proof, and the issue rests between two paragraphs, both claimed by the protest.

As has been stated, the court below held these items classifiable as dental instruments under paragraph 359.

Such testimony as appears in the rather meager record is to the effect that the articulators are used in the laboratories of dental offices for mounting teeth and making plates in the preparation of artificial

teeth; that the plates are fastened to or in the articulator, and a true articulation had before the vulcanizing and finishing of the artificial product. So far as the record discloses they have no other uses.

The Government insists, however—

It can scarcely be said to be a dental instrument for the reason that it is not used in operating on the human organism.

We assume from this that it is the theory of the Government that Congress contemplated that only those articles used by a dentist to operate on the human organism should be classified for tariff purposes as dental instruments. We are unable to agree that so narrow a construction should be given.

Funk & Wagnalls' New Standard Dictionary defines "dentist" as—

One who practices dental surgery, as filling, cleansing, adjusting, or extracting teeth, and *providing artificial dentures;* * * *. (Italics ours.)

"Denture" is defined as—

1. The teeth of an animal collectively.
2. A block or set of teeth.

The meaning of "*dental articulator*" is given by the same authority as—

An *instrument* for matching upper and lower dentures. (Italics ours.)

The word "instrument" is defined as—

1. A means by which work is done; an implement or tool, especially an implement or mechanism for scientific or professional purposes, as distinguished from a device, tool, or machine for industrial use; * * *.

One definition of "instrument" given in Webster's New International Dictionary is—

A material thing or mechanical device for performing work or producing an effect; tool; utensil; implement * * *.

Since the forming and adjusting of artificial dentures is a function peculiar and exclusive to the profession of dentistry, there seems to us no sound reason for denying to a device, necessary in such operations, especially since it is used for no other purpose, classification as a dental instrument.

The Government brief points out that this court, in *United States* v. *Kimball Dental Manufacturing Co.*, 18 C. C. P. A. (Customs) 289, T. D. 44502, held that the term "dental instrument" is "limited to such as are [is] used in dental operative work," quoting from the opinion in that case the following:

In paragraph 359 the Congress, for the first time, provided a special classification for dental instruments. Naturally, it would occur to anyone that this provision was intended to apply to the *tools* which the dentist uses in his *operative work*, and which are exclusively used by that profession. * * *

In saying what we have said, we have in mind that there may be, and probably are, *articles* used by the dentist in the practice of his profession which would *not properly* respond to the definition of *instruments*. (Italics from brief.)

It seems sufficient to say that under the definitions of "dental articulator" and "instrument," quoted *supra*, there is nothing in the *Kimball* case to sustain the Government's contention here. We did not there hold that the term included only articles used by dentists "upon *the human organism.*" The expression of the court there which is here pertinent is—

* * * was intended to apply to the tools which the dentist uses in his *operative work*, and which are *exclusively used* by that profession. (Italics ours.)

Certainly, the articulators in issue meet that requirement. It was not intended by us to be understood as holding that by "used in operative work" implied that the tools or instruments must be used solely "upon the human organism."

In a supplemental memorandum filed by permission of the court, the Government has directed attention to the legislative history of the paragraph and quotes from the Summary of Tariff Information, 1929, Vol. I, page 769, as follows:

### DENTAL INSTRUMENTS

*Description and uses.*—The term "dental instruments" as applied by the trade includes in addition to the well-known hand tools, engines, drills, and grinding wheels and disks, such items as *operative* steel instruments, *chairs, teeth,* and *all sorts of equipment and supplies.* The actual operative tools and instruments of a dentist form only a small portion of the total, yet they are made in thousands of patterns and sizes.

Burrs, drills, and broaches used for drilling and other operations on teeth, because of the frequency of their use and the rapidity with which they wear out, are an important class of dental instrument. (Italics quoted.)

There does not appear to us to be anything in the foregoing statement adverse to, or inconsistent with, the construction as to the articulators given by the court below, and we are not impressed that the statements in a brief, referred to as having been filed before the Ways and Means Committee of the House of Representatives on behalf of the surgical and dental instrument-manufacturing industry, even if such statements might be interpreted as adverse, are entitled to any particular weight in determining the issue. However, even the statements of the said brief are not regarded by us as inconsistent with the Customs Court holding.

In this supplemental memorandum there is also an argument to the effect that the word "including," appearing in said paragraph 359—

* * * is a term of specification and definition; from which it follows that to come within the provisions of paragraph 359 an article would have to be *used* in substantially the same manner as hypodermic needles, hypodermic syringes or forceps; that is to say, it would have to be used in operations on the human organism. (Italics quoted.)

*Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525, T. D. 39666, is cited, and it is suggested that—

if resort is to be had either to the doctrine of *ejusdem generis* or *noscitur a sociis* the merchandise will be excluded from the provision of the paragraph.

As to this it may be remarked, in the first place, that if any weight is to be given to the Summary of Tariff Information, quoted *supra*, said summary is contrary to the contention. That summary mentions specifically several items such as "chairs, teeth, and all sorts of equipment and supplies," in the classification of which resort could hardly be had to either doctrine.

We do not, however, mean here to intimate that the said summary should be given weight, or that it should control the classification of some of the items therein mentioned.

As we view it, the term "including," as used in said paragraph 359, is not a word of limitation but rather one of extension, and is used there not to exclude dental instruments not named *eo nomine*, but to make sure of the inclusion of the specific items that are there given an *eo nomine* designation.

Accordingly, we concur with the Customs Court in the holding that the merchandise represented by Exhibit 1—the articulators—is dutiable at 35 per centum ad valorem under paragraph 359 of the Tariff Act of 1930.

As to the glass articles represented by Exhibits 4, 5, and 6, classified by the collector under paragraph 218 (a), *supra*, the Customs Court overruled said classification and held the merchandise represented by Exhibit 4 to be classifiable under paragraph 218 (e) of said act, and that represented by Exhibits 5 and 6, respectively, to be classifiable under paragraph 217.

The pertinent portion of paragraph 218 (e) reads—

Par. 218 (e) Bottles and jars, wholly or in chief value of glass, of the character used or designed to be used as containers of perfume, talcum powder, toilet water, or other toilet preparations; bottles, vials, and jars, wholly or in chief value of glass, fitted with or designed for use with ground-glass stoppers, when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise; * * * 75 per centum ad valorem. * * *

Paragraph 217 is as follows:

Par. 217. Bottles, vials, jars, ampoules, and covered or uncovered demijohns, and carboys, any of the foregoing, wholly or in chief value of glass, filled or unfilled, not specially provided for, and whether their contents be dutiable or free (except such as contain merchandise subject to an ad valorem rate of duty, or to a rate of duty based in whole or in part upon the value thereof, which shall be dutiable at the rate applicable to their contents), shall be subject to duty as follows: If holding more than one pint, 1 cent per pound; if holding not more than one pint and not less than one-fourth of one pint, 1½ cents per pound; if holding less than one-fourth of one pint, 50 cents per gross: *Provided*, That the terms "bottles," "vials," "jars," "ampoules," "demijohns," and "carboys," as used herein, shall be restricted to such articles when suitable for use and of the char-

acter ordinarily employed for the holding or transportation of merchandise, and not as appliances or implements in chemical or other operations, and shall not include bottles for table service and thermostatic bottles.

The discussion of these articles by the Customs Court is, in part, as follows:

Exhibit 4 is a jar "fitted with" a ground-glass stopper. It is also "suitable for use and of the character ordinarily employed for the holding * * * of merchandise," viz, cotton. Whether or not it was produced by automatic machine has not been shown. We therefore conclude it was not and hold it dutiable at 75 per centum ad valorem under paragraph 218 (e).

In our opinion Exhibits 5 and 6 are also jars, but they are not fitted with ground-glass stoppers, nor are they "of the character used or designed to be used as containers of perfume, talcum powder, toilet water, or other toilet preparations." As shown by the testimony, they are containers of cotton. They are not dutiable under paragraph 218 (e) as claimed.

Are Exhibits 5 and 6 dutiable as jars under paragraph 217? This provision covers among other things jars "wholly or in chief value of glass, filled or unfilled, not specially provided for," at various rates, depending on capacity. There is also a proviso to this paragraph restricting the merchandise covered thereby "to such articles when suitable for use and of the character ordinarily employed for the *holding* or transportation *of merchandise*, and not as appliances in chemical or other operations." The proviso excludes from paragraph 217 "bottles for table service and thermostatic bottles." A mere inspection of the samples, Exhibits 5 and 6, indicates they are not "bottles for table service and thermostatic bottles." The evidence, however, establishes that they are of the character "ordinarily employed for the holding * * * of merchandise," viz, for holding cotton in a dentist's office. Glass containers for cotton are not "biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils," nor "scientific articles and utensils." Therefore, following *De Boer & Livingston (Inc.)* v. *United States*, 58 Treas. Dec. 387, and for the reasons stated therein, we hold the merchandise represented by Exhibits 5 and 6 in this case dutiable at the appropriate rate according to capacity under paragraph 217 of said act. (Italics quoted.)

By reference to that portion of the protest quoted, *supra*, it will be observed that paragraph 217 is not therein mentioned by number, but there is a claim that something involved in the entry is dutiable "under paragraph at 1½ cents per pound, or at 50 cents per gross," and the quoted rates appear in the said paragraph.

The Customs Court held "the protest sufficient to claim under that paragraph [217]," although the number was not mentioned. We shall pass over without discussion any question as to its being sufficient, in view of the conclusion which we reach upon the merits.

Under the testimony in this record, however, we feel compelled to hold that the court below fell into error in classifying all the glass articles here involved. It would seem that the court must have disregarded all the testimony as to use and reached its conclusion from a mere inspection of the exhibit.

But one witness testified, he being a salesman for appellee. His testimony was, in substance, that he had seen all the merchandise

in actual use in various dental offices; that Exhibits 4, 5, and 6 are used in such offices for holding cotton; that he had been selling the articles to dental jobbers for six years, and that so far as his knowledge extended they had no other purpose than to hold cotton.

The witness did say that he had sold the merchandise "to beauty parlors," but it seems perfectly obvious that his testimony, taken as a whole, must lead to the conclusion that the glass articles in issue are for use chiefly as receptacles for holding the cotton which dentists use in practicing their profession. Doubtless they are so used by surgeons also, but the knowledge of the witness was confined to use by dentists. In that respect they may, we think, be properly regarded as utensils in the sense in which that word is first used in paragraph 218 (a).

The classification given them by the collector was under said paragraph 218 (a), and we do not find any evidence which we feel is sufficient to overcome the presumption of correctness which attaches to the classification.

Resting the decision wholly upon the record in the case, we hold that the classification of the collector was correct.

Accordingly, the judgment of the United States Customs Court is *modified*, being *reversed* as to the glass articles represented by Exhibits 4, 5, and 6, and *affirmed* as to the articulators represented by Exhibit 1.